UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-415-GWU

LINDA KAYLOR, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Kaylor v. Barnhart, Lexington Civil Action No. 06-218-JBC (E.D. Ky.) to seek judicial review of an administrative decision denying her application for Disability Insurance Benefits (DIB) originally filed November 24, 2003. (Tr. 48-50). After a period of administrative reconsideration prompted by a Memorandum Opinion, Order and Judgment of March 19, 2007, during which the plaintiff's original application was combined with a new DIB application of October 28, 2005 (Tr. 483-5), another negative agency decision was issued (Tr. 434-44). The case is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

1

08-415 Linda Kaylor

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

08-415 Linda Kaylor

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

08-415  Linda Kaylor

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Mrs. Kaylor, who was 52 years old at the time of her original application and 56 years old as of the date of the most recent ALJ decision on April 15, 2008, with an eighth grade education and work experience as a stocker, department manager, sales associate, and laundry worker (Tr. 691, 693, 742), alleged disability due to degenerative disc disease, nerves, depression, and anxiety attacks, poor hearing, breathing difficulties, and heart problems.  (Tr. 90, 496).  An Administrative Law Judge (ALJ) determined in an October 28, 2005 decision that, while the plaintiff's coronary artery disease and lumbar degenerative disc disease were "severe" impairments, Mrs. Kaylor retained the residual functional capacity to perform a significant number of jobs in the economy, and was not entitled to benefits.  (Tr. 19-24).  This court remanded the case for further consideration under Sentence Four of 42 U.S.C. § 405(g), finding that the ALJ had improperly rejected restrictions proffered by Mrs. Kaylor's then-treating physician, Dr. Shazia Shamim (Tr. 329-32),

7

and because the ALJ had performed an improper credibility assessment. <u>Kaylor v. Barnhart</u>, <u>supra</u>, slip op. at 3-10. The court specifically ordered the Commissioner to reconsider the weight given to Dr. Shamim's opinion and reevaluate the plaintiff's credibility. <u>Id</u>. at 10.

On remand, the ALJ reviewed a considerable amount of new evidence, conducted an additional hearing, and found that Mrs. Kaylor continued to have "severe" impairments due to chronic low back pain secondary to degenerative disc disease of the lumbar spine, and coronary artery disease status post a December 16, 1991 two vessel coronary artery bypass graft. (Tr. 436). He found that Mrs. Kaylor also had medically determinable impairments of an adjustment disorder, a hearing impairment, hypertension, hyperlipidemia, diabetes mellitus, and a history of asthma, which were non-severe. (Tr. 437).

The ALJ presented a reformulated hypothetical question[1] asking whether the plaintiff could perform any jobs if she could lift and carry 40 pounds occasionally and 10 pounds frequently, along with standing and walking a total of six hours in an eight-hour day and sitting six hours in an eight-hour day, and also had the following

---

[1] The residual functional capacity given in the ALJ's decision was essentially identical to that given in the 2005 decision (Cf. Tr. 22, 439), but the actual hypothetical question given at the 2008 hearing appeared to specify a maximum lifting ability of 40 pounds rather than 20 pounds, although in both, the plaintiff could frequently lift only 10 pounds (Tr. 743). The VE identified no jobs above the "light" level, so, regardless of whether the ALJ misspoke or whether the reference to 40 pounds is a typographical error, the discrepancy would not appear to have any effect on the outcome of the case.

08-415  Linda Kaylor

non-exertional restrictions. (Tr. 743). She: (1) could not crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, crouch, climb ramps or stairs, push or pull, or use foot controls with the lower extremities; (3) needed to avoid concentrated exposure to extreme cold and full body vibration; and (4) needed to avoid all exposure to hazards such as unprotected heights and dangerous machinery. (Id.). The VE responded that the plaintiff could do her past relevant work as a sales associate "and probably even the department manager." (Id.). Asked by the ALJ whether the plaintiff could do the jobs as she performed them or as they were performed in the national and regional economy, the VE responded that she "didn't see a lot of evidence that she performed it much different" than it was performed in the rest of the economy. (Tr. 743-4). The ALJ ultimately determined that Mrs. Kaylor was able to do the job of department manager or sales clerk "as it was actually and generally performed." (Tr. 444).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

As the court noted in its prior decision, Dr. Shamim had opined in February, 2005 that Mrs. Kaylor was limited to lifting and carrying less than 5 pounds, and standing or walking no more than four hours in an eight-hour day. She also limited the plaintiff's ability to standing or walking no more than 30 minutes without interruption. (Tr. 329-32). Her problems were listed as impaired hearing, reflux

08-415 Linda Kaylor

disease, diabetic neuropathy of both lower extremities, low back pain, degenerative disc disease, and arthritis. (Id.). The court found that it was improper to rely upon evaluations performed by Dr. Leon Ravvin in September and December, 2002 to discount the more recent opinion of the treating physician. Slip op. at 5. On remand, the ALJ stated that he would grant "limited, moderate probative weight" to the assessment but continued to find that it was not fully supported by his treatment records or other substantial evidence of record. (Tr. 442). He noted that office notes from the White House Clinic, where Dr. Shamim was employed, generally contained few objective findings either before or after the date of Dr. Shamim's assessment. (Tr. 333-37, 363-4, 598-602). He also cited the opinions of state agency reviewers and a consultative examiner as being inconsistent with Dr. Shamim's lifting and carrying limitations, and with the plaintiff's reported ability to perform some daily activities such as cooking, cleaning, shopping, and driving, and with the plaintiff's statement that she could lift up to 10 pounds from a tabletop. (Tr. 443, 706). However, he stated that Dr. Shamim's restrictions on standing, walking, sitting, and her postural and environmental limitations were "not inconsistent" with his conclusion. (Tr. 443). A limitation to standing and walking to no more than four hours in an eight-hour day with a position change every 30 minutes is clearly inconsistent with the ALJ's finding, however.

08-415  Linda Kaylor

The ALJ also rejected the conclusions of two consultative physical examiners obtained on remand.

Dr. Barry Burchett conducted his consultative examination on January 31, 2006 and reviewed a September, 2002 MRI obtained by Dr. Ravvin which had been interpreted as showing minor degenerative changes at the L4-L5 and L5-S1 levels with small central disc protrusions at both levels. (Tr. 276, 593). His examination showed the plaintiff ambulated with a marked limping gait, using a cane, and although she appeared to be comfortable in the seated position, had mild to moderate difficulty arising to the upright position. (Tr. 594-5). Mrs. Kaylor was moderately short of breath following the minimal exertion required for the evaluation, had mild tenderness in the lumbar spine, a positive straight leg raising test in the supine position, a poor ability to stand on her right leg, decreased sensation in her right foot, and could walk on her heels but not on her toes. (Tr. 595-6). She could perform a tandem gait and squat with complaints of pain. Dr. Burchett listed his impressions as degenerative disc disease of the lumbosacral spine, diabetes mellitus, possible angina, probable emphysema, impaired hearing, and hypertension. (Tr. 596-7). Dr. Burchett stated that Mrs. Kaylor's ability to bend, stoop, lift, walk, crawl, squat, carry, travel, and push and pull appeared to be "at least severely impaired due to the objective findings listed above." (Tr. 597).

08-415  Linda Kaylor

Dr. Kooros Sajadi examined the plaintiff on December 5, 2007.[2]  Dr. Sajadi found few objective abnormalities on examination, although he obtained an x-ray showing decreased disc space at the L5-6 and L6-S1 levels.  (Tr. 651).  He listed his diagnostic impression as being low back pain due to degenerative disc disease and osteoarthritis.  (Tr. 652).  Dr. Sajadi also completed a medical source statement limiting the plaintiff to lifting 20 pounds occasionally and 10 pounds frequently, standing two hours in an eight-hour day, walking two hours in an eight-hour day, and being able to "frequently" (defined as one-third to two-thirds of a day) balance, stoop, kneel, crouch, and crawl.  (Tr. 655-60).

The ALJ rejected Dr. Sajadi's report in some respects, finding that it underestimated the plaintiff's ability to stand and walk and overestimated her ability to climb, crawl, stoop, and crouch, based on her reported daily activities and the other objective medical evidence.  (Tr. 441-2).  He rejected Dr. Burchett's restrictions as being too lacking in specificity and inconsistent with the findings at Dr. Sajadi's examination.  (Tr. 442).

Thus, the ALJ found reasons to reject limitations proffered by the only three examining sources to give opinions.  He noted that his opinion was supported by the conclusions of state agency reviewers Sudhideb Mukherjee, David Swan, and

---

[2]At one point in the report, the physician's name is given as "Sajadi Kooros" (Tr. 650), but his report and his functional capacity assessment were both signed "K. Sajadi."  (Tr. 652, 660).

08-415  Linda Kaylor

Daniel Kennon (Tr. 283-90, 323-7, 607-13, 617-23).³  Social Security Ruling (SSR) 96-6p provides that the opinion of a non-examining source can be substantial evidence "[i]n appropriate circumstances" to discount the opinion of examining and treating sources in certain situations, such as where the reviewer has access to the entire body of medical evidence.  Such is not the case here.  Indeed, the opinion of Dr. Swan and the first opinion of Dr. Mukherjee were given even before Dr. Shamim's February, 2005 opinion, and the most recent reviewing opinion is dated April 21, 2006, before Dr. Sajadi's examination as well as before the submission of additional notes from the White House Clinic.  No reason is specified for disagreeing with the opinions of the treating and examining sources which were available at the time. (Tr. 622).  Therefore, the state agency sources lack both the access to the full case record and fail to provide the detailed explanation contemplated by the regulations and case law to overcome the examiners' opinions. See also Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

The court recognizes that the ALJ has a certain amount of latitude to reject the opinions of even treating sources if they are not well supported by objective findings or are inconsistent with other substantial evidence.  Wilson v.

---

³It is questionable whether Kennon has a medical degree.  His name is not followed by the initials "M.D.," there are no professional qualifications in the transcript, and he is identified in Dr. Burchett's report as the state agency disability examiner who requested the medical evaluation.  (Tr. 593, 613).  However, the issue is not critical under the current set of facts.

08-415 Linda Kaylor

Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). In the present case, however, after all of the previously cited opinions were given, the plaintiff's treating sources at the White House Clinic obtained a new lumbosacral MRI scan dated March 13, 2008 which showed, among other things, an L3-L4 protrusion mildly displacing the left L4 nerve root and causing left foraminal narrowing, a bulge at L4-L5 showing foraminal narrowing that was moderate on the right side and mild on the left side and moderate central canal stenosis, and an L5-S1 disc protrusion which contacted both S1 nerve roots and caused mild neural foraminal narrowing on the left. (Tr. 684). This report, which was clearly provided to the ALJ and entered as Exhibit B-15F, is not specifically mentioned or discussed in the current decision, and the ALJ specifically found that there was no evidence of nerve root compression or lumbar spinal stenosis. (Tr. 438).[4] Given that the lack of supporting objective evidence was one of the main reasons for discounting both the plaintiff's subjective complaints and the examining source restrictions, the omission of review of these findings is not harmless error. One of the primary reasons for the court's prior remand was evidence that the plaintiff's low back condition had deteriorated between the time of her examination, including an MRI, by Dr. Ravvin in 2002, and the time of Dr. Shamim's opinion in 2005. Kaylor v. Barnhart, supra, slip op. at 6-7.

---

[4] Although it was obtained approximately two months after the plaintiff's Date Last Insured (Tr. 51), there does not appear to be any event which would have caused the positive findings to appear suddenly.

08-415  Linda Kaylor

The 2008 MRI is powerful evidence of substantial additional deterioration and should be considered by a medical source on remand.[5]

The other reason cited by the court for remanding the case in 2007 was that there appeared to be no inconsistency between the plaintiff's relatively minor daily activities of straightening her house, watching television, and talking on the telephone and her allegations of pain.  Slip op. at 9.  Thus, the court found that the ALJ's credibility assessment was flawed.  On remand, the ALJ considered the plaintiff's reported daily activities in more detail, noting that they included some driving, shopping, cooking, and cleaning, and he accepted that her daily chores took longer on the days in which she experienced more back pain. (Tr. 441).  However, the ALJ noted that the plaintiff had testified that her pain would be worse on some days than on others, and on her good days she could perform housework. (E.g., Tr. 697).  He concluded that her ability to engage in such activities showed that her back pain was not so intense or pervasive as to completely preclude the performance of basic work activities on a regular and continuing basis.  (Tr. 441). However, it is difficult to see how a person who frequently had "bad days" in which

---

[5]The 2008 MRI was accompanied by a note from Registered Nurse-Practitioner Rachel Powell at the White House Clinic which indicates that the plaintiff's chronic back pain was "debilitating."  (Tr. 683).  This opinion was also not mentioned by the ALJ. While a registered nurse-practitioner is not considered an acceptable medical source under 20 C.F.R. § 404.1513(d), SSR 06-03p indicates that the opinions of such sources may be entitled to weight under certain circumstances.

15

08-415 Linda Kaylor

she could not even perform household chores would be able to perform a full-time job. The credibility assessment continues to be flawed.

For the reasons stated in the Commissioner's brief, the plaintiff's argument that the 2005 ALJ decision should have been given <u>res</u> <u>judicata</u> effect is without merit. <u>Commissioner's Motion for Summary Judgment</u>, Docket Entry No. 9, pp. 4-6.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 11th day of August, 2009.

**Signed By:**

<u>*G. Wix Unthank*</u>

**United States Senior Judge**